**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

**Civil Action No.**

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,**

**Plaintiff,**

**v.**

**NATURE'S HERBS & WELLNESS CENTER D/B/A HIGH PLAINZ STRAINS,**

**Defendant.**

---

## COMPLAINT

---

### NATURE OF THE ACTION

This is an action under Title I of the Americans with Disabilities Act of 1990 and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of disability and to provide appropriate relief to Megan Myrant. As alleged with greater particularity below, Nature's Herbs & Wellness Center ("Defendant" or "Nature's Herbs") failed to reasonably accommodate Myrant's disability and suspended and then discharged her in violation of the ADA and in retaliation for engaging in protected activity under the ADA.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 107(a) of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12117(a), which incorporates by reference Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.§ 2000e-5(f)(1) and (3), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Colorado.

## PARTIES

3. Plaintiff, the Equal Employment Opportunity Commission (the "Commission" or "EEOC"), is the agency of the United States of America charged with the administration, interpretation and enforcement of Title I of the ADA and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4. At all relevant times, Defendant Nature's Herbs, a Colorado corporation, has continuously been doing business in the State of Colorado, and has continuously had at least 15 employees.

5. At all relevant times, Nature's Herbs has continuously been an employer engaged in an industry affecting commerce under Sections 101(5) and 101(7) of the ADA, 42 U.S.C.§§ 12111(5), (7).

6. At all relevant times, Nature's Herbs has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

## ADMINISTRATIVE PROCEDURES

7. More than thirty days prior to the institution of this lawsuit, Megan Myrant filed charge number 541-2020-01290 with the Commission alleging violations of the ADA by Nature's Herbs.

8. Myrant filed her charge of discrimination with the EEOC on July 1, 2020.

9. Nature's Herbs received notice of Myrant's charge of discrimination on July 2, 2020.

10. The Commission investigated Myrant's charge of discrimination.

11. Nature's Herbs participated in the Commission's investigation of the charge.

12. On April 10, 2024, the Commission issued a Letter of Determination finding reasonable cause to believe the ADA was violated.

13. The Letter of Determination invited Nature's Herbs to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

14. Nature's Herbs agreed to participate with the EEOC in conciliation.

15. The Commission engaged in communications with Nature's Herbs to provide it the opportunity to remedy the discriminatory practices described in the Letter of Determination.

16. The Commission was unable to secure from Nature's Herbs a conciliation agreement acceptable to the Commission.

17. On June 14, 2024, the Commission issued to Nature's Herbs a Notice of Failure of Conciliation.

18. All conditions precedent to the institution of this lawsuit have been fulfilled.

## GENERAL ALLEGATIONS

### Myrant's Disabilities

19. Megan Myrant is a qualified individual with a disability under Sections 3 and 101(8) of the ADA, 42 U.S.C. §§ 12102 and 12111(8).

20. As a child, Myrant was diagnosed with Type I Diabetes.

21. Myrant continues to have Type 1 Diabetes.

22. When Myrant was around nine years old, she had a Transient Ischemic Attack, otherwise known as a mini-stroke.

23. The mini-stroke was caused by her diabetes.

24. Myrant has also been diagnosed with Post Traumatic Stress Disorder, Generalized Anxiety Disorder, and Depressive Disorder.

25. Together, Myrant's disabilities and their treatments substantially limit her memory.

### Myrant's Employment by Defendant

26. Since at least January of 2020, Nature's Herbs has engaged in unlawful employment practices at its Garden City location, in violation of Sections 102(a), 102(b)(5)(A), and 102(b)(5)(B) of Title I of the ADA, 42 U.S.C. §§ 12112(a) and 12112(b)(5)(A)–(B), and Section 503 of Title V of the ADA, 42 U.S.C. § 12203.

27. According to Defendant's hiring website, the company operates seven retail stores throughout Colorado and employs about 225 employees.

28. On October 22, 2019, Nature's Herbs hired Myrant to work as a budtender at the Nature's Herbs store in Garden City, Colorado.

29. During her initial employment interview and throughout her employment with Defendant, Myrant informed managers and supervisors that she had disabilities which affected her memory.

30. During Myrant's initial employment interview, she also explained to Human Resources that she may have trouble remembering to clock in and out.

31. On December 12, 2019, Myrant received a performance review from Manager Lacey Walker.

32. The performance review stated, in part, "[i]n the short time Megan has been with us we've appreciated all of her help. . . ."

33. On the same day, Myrant was also given a 50-cent per hour raise.

### Myrant's Requests for Accommodation

34. During the December 18, 2019 performance review, Walker informed Myrant that one area she need to work to improve was memorizing the pricing of products.

35. In response to this feedback, Myrant informed Walker that she had a stroke when she was nine and it was hard for her to remember things sometimes.

36. Myrant asked Walker that Defendant be patient with her because of her memory problems.

37. On January 8, 2020, Myrant received a verbal warning for failing to clock in and out for her shifts.

38. The documentation of the verbal warning was signed by Human Resources (HR) Manager, Karen Green, who performed quarterly attendance reports on Defendant's employees.

39. Attached to the documentation was a printout indicating Myrant failed to properly clock in and/or out during six different shifts that quarter, which included shifts from November 3, 2019 to December 1, 2019.

40. On January 9, 2020, Myrant texted another manager, Crissy DeLeon, and requested a meeting to discuss the verbal warning.

41. DeLeon responded that she and Myrant were not on the schedule together for a few days but Myrant could call DeLeon or talk to Green.

42. Myrant texted DeLeon back and told her the verbal warning Myrant had received "counts as disability discrimination" because all four of her supervisors were aware of her disabilities.

43. Myrant also texted DeLeon information from the internet about Transient Ischemic Attacks as well as information about how her other disabilities can negatively affect memory or cause memory loss.

### Myrant's Suspension

44. In response to Myrant's texts about her disabilities, DeLeon texted Myrant that DeLeon had spoken to Green and Myrant needed to meet with Green the following Monday, January 13, 2020 at any time after 10:00 a.m.

45. DeLeon told Myrant to bring "documentation of any health issues mentioned."

46. The text from DeLeon to Myrant on January 9, 2020 also informed Myrant her shifts were "covered" until Monday.

47. Myrant had been scheduled to work two shifts between January 9, 2020 and January 13, 2020.

48. Myrant texted DeLeon and informed her that forcing Myrant to take time off was retaliation.

49. Myrant also texted DeLeon that the situation was "ridiculous" and sent links from the internet regarding workplace retaliation.

50. While Myrant and DeLeon were exchanging text communications, Myrant also posted on Facebook that she might have to find a new job.

### Defendant's Decision to Terminate Myrant

51. Green, after speaking with DeLeon, emailed owners John and Alicia Rotherham on January 9, 2020 and informed them Myrant had a "verbal write up for not clocking in/out 6 times."

52. Green also informed the Rotherhams that Myrant had texted DeLeon information about her disabilities and disability discrimination.

53. Green goes on to state: "Guess I need to see how we can accommodate her to remember to clock in/out which is required for all employees and it is not an undue hardship to anyone?"

54. Ms. Rotherham asked Green if Defendant was made aware of "these issues" at the time of Myrant's hire.

55. Green replied that she was not aware, even though Green later wrote in an email on January 13, 2020 to Walker that Myrant had mentioned to Green she had diabetes.

56. Green also wrote in her January 9, 2020 email to the Rotherhams that she had asked Walker if she was aware of Myrant's disabilities but Walker had not responded.

57. Green ended her email by suggesting a possible accommodation: "[C]an we put her [Myrant] in Trimming where she doesn't have to use Memory for pricing..sales etc and Trimmers come in/out clocking in/out as a group and then she won't have that issue?"

58. In response, Mr. Rotherham wrote: "Let her know we were not aware of these issues that would not let her do her job she was hired for and cut her loose. My take."

59. After this email exchange, Walker responded to Green on January 12, 2020 and informed Green that Walker had become aware of Myrant's memory difficulties in December 2019, when Walker conducted Myrant's performance review.

60. Green responded to Walker that Myrant was a "fruitcake" and Mr. Rotherman "said to let her go since she can't do the job we hired her for…memory issue…can't remember prices and stains [sic]."

## Myrant's Termination

61. On Monday, January 13, 2020, at 8:20 am, Myrant texted DeLeon and told her she did not have her medical records ready and was not sure what to do.

62. DeLeon told Myrant that she would need to speak with Green.

63. At 8:16 am that same day, Green sent Myrant an email informing her Nature's Herbs was terminating her employment.

64. At 8:35 am, Myrant emailed Green and told her that she did not have enough time to get her records together for the meeting.

65. Green told Myrant that she "[s]hould have provided any documentation upon hiring if we are to accommodate you . . . ."

66. The termination form completed by Crissy DeLeon three days after Green's email states the reason for Myrant's termination was "insubordination."

67. The form attached emails, text messages, and Facebook posts by Myrant, presumably as documentation supporting Defendant's basis for termination.

68. The attachments include text messages and emails sent by Myrant after Defendant terminated Myrant as well as text messages and emails in which Myrant informed Defendant of her disabilities and that Defendant was acting in violation of the ADA.

69. Several of Defendant's employees received verbal warnings but were not discharged for failing to clock in and out over a quarterly period.

70. Multiple employees engaged in infractions that were the same or more severe as Myrant's, but none of them were discharged.

## FIRST CLAIM FOR RELIEF
### Failure to provide reasonable accommodation for disability
### (42 U.S.C. §§ 12112(a) and (b)(5)(A))

71. The allegations contained in the foregoing paragraphs are hereby incorporated by reference.

72. Myrant is a qualified individual with a disability, as defined in the ADA. *See* 42 U.S.C. § 12102.

73. Myrant was qualified to hold the position of budtender at Nature's Herbs with or without reasonable accommodation.

74. Myrant notified Nature's Herbs of her disabilities.

75. Myrant requested reasonable accommodations for her disabilities, as described in the paragraphs above.

76. Nature's Herbs denied Myrant's requests for accommodation.

77. Nature's Herbs did not engage with Myrant in an interactive process to determine what accommodations were available to enable Myrant to perform the essential functions of her own job or another position.

78. There were reasonable accommodations available that would have allowed Myrant to perform the essential functions of her job as a budtender.

79. One reasonable accommodation that could have been provided was to have Myrant's managers remind her to clock in or out.

80. Another reasonable accommodation was that Defendant could have put up brightly colored signs at Myrant's workstation or another highly trafficked area to remind her to clock in and out.

81. Another reasonable accommodation that could have been provided to Myrant was to reassign her to the trimmer position as identified by Green.

82. The effect of the practices complained of in the foregoing paragraphs has been to deprive Myrant of equal employment opportunities because of her disabilities, in violation of Sections 102(a) and 102(b)(5)(A) of the ADA, 42 U.S.C. §§ 12112(a) and (b)(5)(A).

83. The effect of the practices complained of in the paragraphs above has been to inflict emotional pain, suffering, and inconvenience upon Myrant and to deprive her of the financial and other benefits of working for Nature's Herbs.

84. The unlawful employment practices complained of in the foregoing paragraphs were intentional.

85. The unlawful employment practices complained of in the foregoing paragraphs were done with malice or reckless indifference to Myrant's federally protected rights.

## SECOND CLAIM FOR RELIEF
### Disparate Treatment Based on Disability and/or the Need to Provide Accommodation
### (42 U.S.C. §§ 12112(a) and (b)(5)(B))

86. The allegations contained in the foregoing paragraphs are hereby incorporated by reference.

87. Myrant is a qualified individual with a disability, as defined in the ADA. *See* 42 U.S.C. § 12102.

88. Myrant was qualified to hold the position of budtender at Nature's Herbs with or without reasonable accommodation.

89. Nature's Herbs suspended Myrant on January 9, 2020.

90. Nature's Herbs discharged Myrant on January 13, 2020.

91. Nature's Herbs suspended and discharged Myrant because of her disabilities and/or because of the need to provide a reasonable accommodation for her disabilities.

92. The effect of the practices complained of in the foregoing paragraphs has been to deprive Myrant of equal employment opportunities and otherwise adversely affect her status as an employee, because of her disabilities, in violation of Sections 102(a) and 102(b)(5)(B) of the ADA, 42 U.S.C. §§ 12112(a) and (b)(5)(B).

93. The unlawful employment practices complained of in the foregoing paragraphs were intentional.

94. The unlawful employment practices complained of in the foregoing paragraphs were done with malice or with reckless indifference to the federally protected rights of Myrant.

### THIRD CLAIM FOR RELIEF
### Retaliation Based on Protected Activity
### (42 U.S.C. § 12203(a))

95. The allegations contained in the foregoing paragraphs are hereby incorporated by reference.

96. After Myrant received a verbal warning for failing to clock in and out, she texted her manager on January 9, 2020 and informed her manager of her disabilities and information on the ADA.

97. Myrant also complained about disability discrimination and retaliation.

98. Myrant's requests for accommodation constituted protected activity under the ADA.

99. Myrant's complaints of discrimination and retaliation also constituted protected activity under the ADA.

100. Nature's Herbs suspended Myrant on January 9, 2020, the same day she engaged in protected activity.

101. Nature's Herbs discharged Myrant on January 13, 2020, just four days after she engaged in protected activity.

102. Nature's Herbs suspended and discharged Myrant in retaliation for Myrant's engaging in the protected activities of requesting reasonable accommodation for her disabilities and complaining about discrimination and retaliation under the ADA.

103. The effect of the practices complained of in the foregoing paragraphs has been to deprive Myrant of equal employment opportunities because she engaged in protected activity, in violation Section 503(a) of the ADA, 42 U.S.C. § 12203(a).

104. The unlawful employment practices complained of in the foregoing paragraphs were intentional.

## **PRAYER FOR RELIEF**

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Nature's Herbs, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from discriminating against qualified individuals with disabilities by failing to provide reasonable accommodation for their disabilities; by discharging or suspending qualified individuals with disabilities because of their disabilities or the need to accommodate their

disabilities; and by retaliating against individuals for engaging in protected activity under the ADA.

B.   Order Nature's Herbs to institute and carry out policies, practices, and programs that provide equal employment opportunities for qualified individuals with disabilities and eradicate the effects of its past and present unlawful employment practices.

C.   Order Nature's Herbs to make whole Myrant by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to the rightful place hiring of Myrant, or front pay in lieu thereof.

D.   Order Nature's Herbs to make whole Myrant by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of above, including emotional pain and suffering, in amounts to be determined at trial.

E.   Order Nature's Herbs to pay Myrant punitive damages for its malicious and reckless conduct, as described above, in amounts to be determined at trial.

F.   Grant such further relief as the Court deems necessary and proper in the public interest.

G.   Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

Karla Gilbride
General Counsel

Christopher Lage
Deputy General Counsel

Gwendolyn Reams
Associate General Counsel

Mary Jo O'Neill
Regional Attorney

Laurie Jaeckel
Assistant Regional Attorney

/s/ *Megan K. O'Byrne*
Megan K. O'Byrne
Trial Attorney
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Denver Field Office
950 17th Street
Suite 300
Denver, CO 80202
(720) 779-3608
megan.obyrne@eeoc.gov

**PLEASE NOTE**: For purposes of service upon the EEOC, it is sufficient that pleadings, notices, and court documents be served upon the Trial Attorney. Duplicate service is not required on the General Counsel and Deputy General Counsel in Washington, D.C.